**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
TUFO'S WHOLESALE DAIRY, INC.,   :
         Plaintiff,   :   03 Civ. 10175 (JFK)
   -against-   :   **OPINION AND ORDER**
                            :
CNA FINANCIAL CORP.,   :
         Defendant.   :
------------------------------X

APPEARANCES:

    For Plaintiff Tufo's Wholesale Dairy, Inc.:

        Subin Associates, LLP
        Herbert S. Subin, Esq.
        291 Broadway, 9th Floor
        New York, NY 10007


    For Defendant CNA Financial Corp.:

        Clausen Miller P.C.
        Charles J. Rocco, Esq.
        One Chase Manhattan Plaza
        New York, NY 10005

**JOHN F. KEENAN, United States District Judge**
**JOHN F. KEENAN**, United States District Judge:

<u>Preliminary Statement</u>

Before the Court is the motion of Defendant, CNA Financial Corp. ("CNA"), for reconsideration of this Court's denial of its summary judgment motion or, in the alternative, certification for interlocutory appeal. For the reasons that follow, Defendant's motion is denied in its entirety.

<u>Factual Background</u>

The following is a summary of the parties' "Agreed Statement of Undisputed Material Facts," as well as relevant excerpts from the insurance policy at issue in the case. The facts in this section are the same facts considered by this Court in deciding the summary judgment motion. <u>Tufo's Wholesale Dairy, Inc. v. CNA Financial Corp.</u>, No. 03-10175, 2005 WL 756884, *1-3 (S.D.N.Y. 2005). No new facts have been added or brought to the Court's attention by either party.

Tufo's Wholesale Dairy, Inc. ("Tufo") operates a wholesale food company in Bronx County, New York, that sells, among other items, dairy products. Tufo purchased a policy of insurance ("policy") from CNA's subsidiary, Continental Casualty Company, providing coverage for the period of November 3, 2002, to November 3, 2003.

Tufo's policy, a "Boiler and Machinery Insurance

Policy" included a "Consequential Damages Endorsement" and a "Utility Interruption Endorsement." The policy required, for plaintiff to establish coverage, an "accident" to an "object" as defined in the policy. "Accident" is defined as follows:

> 1. "Accident" means a sudden and accidental breakdown of the "object" or a part of the "object." At the time the breakdown occurs, it must manifest itself by physical damage to the "object" that necessitates repair or replacement.
> None of the following is an "accident":
> a. Depletion, deterioration, corrosion or erosion;
> b. Wear and tear;
> c. Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;
> d. Breakdown of any vacuum tube, gas tube or brush;
> e. Breakdown of any electronic computer or electronic data processing equipment;
> f. Breakdown of any structure or foundation supporting the "object" or any of its parts; or
> g. The functioning of any safety or protective device.

The definition of "object" includes boilers, fired vessels, "apparatus used for the generation, transmission or utilization of mechanical or electrical power," and certain tanks "used with an 'object.'"

The Consequential Damages Endorsement, which covers "food solely in storage dependent upon cold or heat," also requires an "accident" to an "object" under the following circumstances:

> a. The "accident" must occur during the time this coverage is in force;
> b. The "object" that has the "accident" must be:
>    (1) Specified as covered in the Consequential Damage Schedule; and

(2) At a "location" specified in the Consequential Damage Schedule;
(3) In use or connected ready for use.

In addition, the Consequential Damage Endorsement contains the following exclusion:

1. All the exclusions of the Boiler and Machinery Coverage Form apply to loss and expense under this endorsement except: Lack of power, light, heat, steam or refrigeration.

The Utility Interruption Endorsement, which covers certain types of loss due to the failure of a utility, contains the following language:

1. The coverage provided . . . is extended to include an "accident" to an "object," whether or not at the location specified . . ., that is:
    1. Owned, operated or controlled by a public or private utility that you have contracted with to furnish you the utility service specified above; and
    2. Of a type defined in the Object Definition Endorsement(s) specified above.

The Utility Interruption Endorsement also contains the following exclusion:

We will not pay for loss caused by or resulting from:
. . . .
13. A deliberate act or acts by the supplying utility to shed load to maintain system integrity.

During the time the policy was in effect, on August 14, 2003, an electrical power outage (hereinafter referred to as the "blackout") covered the east coast of the United States, extending to the Midwest as far as Ohio. Before the blackout occurred, Tufo's electrical supplier, Consolidated Edison Company ("Con Ed")

was experiencing normal system operations.  Just before 4:11 p.m., voltage on the Con Ed system began fluctuating and declining and frequency began to drop.  Low system frequency triggered sensors which caused the functioning of safety and protective devices that activated an automatic, four-step under-frequency load shedding program disconnecting approximately 50% of Con Ed's load.  The voltage continued to fluctuate and did not recover.  There was a loss of generation and transmission and the function of safety and protective devices shut down the system very quickly.  The Con Ed system shut down was not caused by physical damage to Con Ed equipment.

Tufo's refrigeration units consequently lost electrical power until August 15, 2003.  As a result, Tufo's dairy products spoiled and had to be discarded.

Other than the spoiled dairy products, there was no physical damage to property owned by Tufo, including its refrigeration units, that necessitated repair or replacement as a result of the blackout.  Once power was restored, Tufo's refrigeration units were turned on and operated normally.

## Procedural History

After filing its insurance claim with Defendant and being denied coverage, Plaintiff, Tufo's Wholesale Dairy, Inc. ("Tufo"), filed the instant action in the Supreme Court, Bronx

County, as a class action, alleging breach of contract and unfair claim settlement practices, and demanding damages exceeding $100 million plus punitive damages. Defendant, a Delaware corporation with its principal place of business in Illinois, removed the action to this Court. In the interest of expediency, the parties, in a Civil Case Scheduling Order dated March 17, 2004, agreed that Plaintiff's motion for class certification would be stayed pending the outcome of Defendant's summary judgment motion.

In its summary judgment motion, Defendant argued principally that Plaintiff cannot prove that it meets the requirements for triggering coverage under the policy. Specifically, Defendant argued that, according to the policy, Plaintiff's loss of inventory resulting from the blackout is not a covered loss. Plaintiff principally contended that the contract is ambiguous and illusory and that "a reasonable business person" would have believed that the policy covered losses due to the blackout.

The Court denied Defendant's motion because it found that "ambiguities exist in the policy that preclude summary judgment." Tufo's Wholesale Dairy, 2005 WL 756884, at *4. The Court described three examples of ambiguity in the policy and noted that its focus on these examples was "not intended to be exhaustive." Id. First, the Court found ambiguity in CNA's attempt to define "accident" through use of the term "accidental."

6

"A definition that defines by use of the word defined inherently creates ambiguity." Id. Second, the Court found that the exception to the exclusion in the Consequential Damage Endorsement is unclear. "Ambiguity exists as to whether a '[l]ack of power, light, heat, steam or refrigeration' would or would not trigger coverage." Id. Third, the Court found that the exclusion to the Utility Interruption Endorsement, "although seeming to strengthen CNA's argument that coverage under the policy has not been triggered, only adds to the ambiguity when considered in the context of the policy as a whole." Id.

Defendant now moves for reconsideration of this Court's denial of its summary judgment motion or, in the alternative, certification for interlocutory appeal. Defendant claims reconsideration is warranted because:

> the Court overlooked a deciding factor in this case – that coverage does not apply unless there is physical damage to an object requiring repair or replacement. Instead, the Court focused its decision on the first sentence of the definition of "accident". . . . However, regardless of any ambiguity in the first sentence, the second sentence in the definition unambiguously requires physical damage to an object . . . as a prerequisite to coverage . . .

(Def.'s Memo. of Law 1.) Defendant contends certification for interlocutory appeal is appropriate because the case involves a controlling issue of law, resolution of which would expedite the ultimate termination of litigation. (Def.'s Memo. of Law 6.)

## Discussion

7

I. Motion for Reconsideration Denied

Local Rule 6.3 (formerly Rule 3(j)) governs motions for reconsideration. It provides that a motion for reconsideration must "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." S.D.N.Y. R. 6.3 (motions for reconsideration or reargument); see also Anglo American Ins. Group, P.L.C. v. CalFed Inc., 940 F.Supp. 554, 557 (S.D.N.Y.,1996); Morser v. AT&T Information Systems, 715 F.Supp. 516, 517 (S.D.N.Y.1989) (finding that Rule 6.3 requires the moving party to present "matters or controlling decisions the court overlooked that might materially have influenced its earlier decision"). Rule 6.3 "is to be narrowly construed and strictly applied to avoid repetitive arguments on issues that have been considered fully by the court." Anglo American Ins. Group, 940 F.Supp. at 557 (citing Ades v. Deloitte & Touche, 843 F.Supp. 888, 892 (S.D.N.Y. 1994)). Under this standard, reconsideration will generally be denied. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Shrader provides an example of the type of case in which reconsideration is appropriate: The Second Circuit held that the lower court's reconsideration of a summary judgment motion was not an abuse of discretion because the moving party presented the district court with "data the court had not previously considered," namely extensive legislative history on

the relevant statute as well as new case law. Id. Similarly, in Morser, 715 F.Supp. at 518, reconsideration was granted because of subsequently decided Second Circuit cases that might reasonably have altered the result had they been considered in the initial summary judgment motion. In contrast, reconsideration is not appropriate "where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

Here, CNA seeks to relitigate issues already decided in this Court's March 2005 Decision and Order denying summary judgment. Tufo's Wholesale Dairy, Inc. v. CNA Financial Corp., No. 03-10175, 2005 WL 756884 (S.D.N.Y. 2005). CNA claims the Court overlooked language in the policy stating that coverage is triggered by an "accident" to an "object." The Court did not overlook this language. The facts stated above in this decision under the heading "Factual Background" are the same facts considered by the Court in deciding Defendant's summary judgment motion. From these facts it is clear that the Court was aware of and considered the language in question. In fact, the Court quotes directly from language in the policy that states the necessity of an "accident" to an "object" to trigger coverage. Id. at *1-3. After considering this language and other relevant passages in the context of the policy as a whole, the Court found ambiguities as to how coverage is triggered. Id. at *4.

In connection with Defendant's motion for

reconsideration, CNA offers no new data for the Court to consider. Rather, CNA seeks to rehash issues the Court already considered in denying CNA's summary judgment motion. CNA's motion for reconsideration is, therefore, denied.

II. Certification for Interlocutory Appeal Denied

Generally, an order denying summary judgment is not appealable. Baden v. Koch, 638 F.2d 486, 488 (2d Cir. 1980); Clark v. Kraftco Corp., 447 F.2d 933, 934 (2d Cir. 1971). Defendant, however, argues that the Court's summary judgment denial warrants interlocutory appeal under 28 U.S.C. § 1292. Section 1292 allows interlocutory appeals for orders "involv[ing] a controlling issue of law as to which there is substantial ground for difference of opinion" and where such an appeal would "materially advance the ultimate termination of the litigation."

Defendant argues that the question of whether Tufo is entitled to coverage under the policy is a controlling question of law, making interlocutory appeal appropriate. Defendant incorrectly conflates questions of law with questions of fact. By denying summary judgment, this Court established that material issues of fact exist, which preclude judgment on the law as to whether coverage was triggered. Allowing an interlocutory appeal to resolve these ambiguities would usurp the role of the finder of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ("[A]t the summary judgment stage the judge's function is

not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") Whether there is coverage under the policy is a genuine issue for trial, not a controlling question of law.

Defendant's motion for certification for interlocutory appeal is denied.

## Conclusion

For the reasons given, Defendant's motion for reconsideration or, in the alternative, certification for interlocutory appeal, is denied in its entirety. The parties are to appear before the court on January 5, 2006 at 11AM ~~2005~~ for a scheduling conference.

SO ORDERED.

Dated: New York, New York
       December 5, 2005

JOHN F. KEENAN
United States District Judge